Thank you, David. Case number 13-2362, Alexander Aceval v. Duncan MacLaren. Argument not to exceed 15 minutes per side. Mr. Banghartlin, you may proceed for the appellant. Thank you. Your Honors, I may please the Court. Linus Banghartlin, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting that this Court reverse the District Court's erroneous grant of habeas relief on both the Council of Choice and Double Jeopardy claims. The Attorney General has taken the circumstances surrounding this case very seriously, but the District Court apparently believed that what had happened was not enough, and therefore used the power of habeas to impose a sanction on the police, prosecutor, and judge by granting the petitioner the windfall of absolute What the federal courts are empowered by Congress to grant habeas relief to vindicate the constitutional rights of state prisoners, only where the state courts have contravened or unreasonably applied clearly established federal law. I'm sorry, was there a question, Your Honor? I'm sorry, I thought I heard something. Go ahead. Counsel, I'll ask a question since that noise may have distracted you. One thing that I should have been able to figure out but have not, I'm just curious, so he pleads guilty the second time around, right? Correct, Your Honor. And I take it there's a reservation of rights for appealing the Double Jeopardy claim? No, Your Honor. Nothing was reserved. This was an unconditional guilty plea. He gave up his right to appeal as of right and was So it's an unconditional plea, but the agreement's not like some that I see from U.S. attorney's offices in the 6th Circuit that says in return for the benefits of this plea agreement, you can't file either a direct appeal or you can't bring a habeas claim, or a 2255. It doesn't have that language. Correct, Your Honor. It doesn't have that language. Okay. All right, keep going. Okay, thank you, Your Honor. I'm going to address the Council of Choice claim first and only briefly, and I'm only going to point out that the petitioner in his brief before this court has advanced no argument as to why the guilty plea did not waive the Council of Choice claim. This is Judge Marbley. Under Gonzalez-Lopez, isn't a violation of the right to counsel complete when a defendant is erroneously prevented from being represented by the lawyer that he wants, regardless of the quality of the representation? Once that happens, isn't that violation complete? Your Honor, it's correct that it's regardless of the quality of the representation. That's true. But under Gonzalez-Lopez, if the petitioner only had one attorney that he wanted, and the court unreasonably denied him the right to be represented by that attorney, then the violation would be complete. Well, below, Moffitt was not permitted to continue because the trial judge felt that Moffitt would delay needlessly the trial, etc. Is that right? That is one reason, yes. Correct, Your Honor. But 8th of all never asked for a continuous, did he? No, Your Honor. Go ahead, I'm sorry. No, no, you go ahead. Okay, yes, you're right. Mr. Acevall never requested a continuance and never did any other thing to preserve the claim at all. I mean, Acevall wasn't going to delay the proceedings by having Moffitt in the case, was he? I don't think there's any reason to think that Acevall would delay the case by having Moffitt in the proceedings. I think the judge was concerned and reasonably concerned that Moffitt would delay the proceedings. What evidence did she have that Moffitt was going to delay the proceedings? Mr. Acevall's other retained counsel, Mr. Harris, moved to withdraw 12 days before the scheduled date for trial because he felt that he could not competently, which is to say ethically, defend Mr. Acevall if Mr. Moffitt was also involved and they were essentially butting heads. And so Moffitt never, Moffitt explicitly said he was not willing to try the case. Harris was Acevall's choice to try the case, to actually go to trial, and Harris was saying, I can't do the job if Moffitt is in it. So it would either delay the case because they let Harris withdraw and get another attorney, or they proceed with Harris and he can't do his best job and you've got a built-in ineffective assistance claim right out the gate. So the trial judge absolutely acted reasonably, absolutely acted within what Gonzalez-Lopez contemplated for reasonable reasons to discharge. And in addition, as the state has pointed out, Gonzalez-Lopez doesn't deal with a multiple counsel situation. Mr. Acevall was represented by his retained counsel, Mr. Harris. Gonzalez-Lopez doesn't say you get as many counsel that you want as you want. It just says you get your choice of counsel. He had Mr. Harris. And then in addition, it was also waived by the guilty plea. And there's been no argument raised that that guilty plea did not effectively waive, I'm sorry, not effectively waive, that it did not in fact waive any counsel of choice claim that may have existed. Okay. Thank you. Thank you, Your Honor. I'll move on to the double jeopardy claim. And I think what's important first is to establish what the standard of review is because it appears to me there's some dispute. The petitioner's brief says that it's de novo. The Michigan Court of Appeals absolutely did decide the double jeopardy question and did so twice. In their first order, they denied leave to appeal for lack of merit in the grounds presented. That is a merits adjudication of all the claims that were presented under Harrington v. Richter. The fact that there's no detailed reasoning does not insulate it from epidefrance. I'm sorry, do I hear a question? Okay, I'll continue. And when it was remanded back to the Michigan Court of Appeals to decide the due process claim, the Michigan Court of Appeals also mentioned that the double jeopardy claim was without merit, even though they hadn't been asked to do so by the Michigan Supreme Court. So this has been presented to and decided by the Michigan Court of Appeals on the merits, full epidefrance is required. Counsel, if this court should disagree with you about whether or not the Michigan Court of Appeals issued a merits decision, do you win anyway? Yes, Your Honor, we do win anyway. Could you explain that stance?  In that case, this court would have to decide as an issue of first impression whether to create a new constitutional rule and apply it for the first time on habeas relief. This would be an extension of Kennedy. And as the petitioner said in the state court, this is an issue of first impression. There's no law on this issue. And of course, that's not repeated before this court. I would like to ask how you would frame the question that you deem to result in a first impression matter. The question is whether when a trial ends in a hung jury, whether there is an exception to the well-established rule that jeopardy does not terminate and that retrial is not barred based on prosecutorial misconduct and judicial misconduct that is not engaged in for the purpose of goading the defendant into seeking a mistrial. That would be the question. Mr. Banghart-Linn, hasn't that question been answered somewhat by Dennett when it said that the double-decker clause bars retrials where bad faith conduct by a judge or prosecutor threatens the harassment of the accused by successive prosecutions or declarations of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant? That's pretty much what Dennett says, isn't it? That is what Dennett says, Your Honor, absolutely. And Dennett's left open, right? Dennett's mentioned the possibility of goading the defendant into seeking a mistrial but also these other categories of bad faith and overreaching which were not defined in Dennett's. They were kind of left vague and left open, which is why the Supreme Court in Oregon v. Kennedy recognized that that door had been left open and they closed it and they locked it. The majority in Kennedy said we recognize there is this exception where the prosecutorial misconduct is intended to goad the defendant into seeking a mistrial and any language that we put in Dennett's recognizing the possibility of other exceptions, that is not applicable. It is only, and in fact, to make it clear, they use crystal clear language in the majority and you can read the concurrence in Kennedy as well because they're upset with the majority for closing the store and they say we need to have these other exceptions open for other prosecutorial misconduct, the bad faith, the overreaching and the harassment. They said that's the problem with the Kennedy majority is that they're closing these stores. So there's no question that Kennedy closed this door and that the only exception that still exists is for prosecutorial misconduct that is intended to goad the defendant into seeking a mistrial. And that's consistent with what the Supreme Court has held in general. For example, you can look at other egregious violations by prosecutors and I would analogize this to the Brady context where the prosecution has withheld exculpatory evidence. Mr. Barnhart-Lynn, in Brady and its progeny, usually you had one bad actor, the prosecutor. The judge usually wasn't in on it and the police weren't in on it as you have in this case. In this case, all of the actors who are to protect the rights of the defendant and hence the rights of the citizenry were corrupt. And so it exposed the defendant to the possibility of conviction based on this multiple corruption. And in fact, they were all sentenced to jail. So this case is sort of like an anomaly or maybe it's just sui generis because you had everybody who was supposed to otherwise protect the integrity of the trial acting in derogation of the integrity of the trial. Didn't you have that in this case? And doesn't that make this an outlier? Absolutely, Your Honor. Absolutely, it's an outlier. It is an anomaly. But the question is, what is clearly established federal law that the state court violated by saying that retrial was not barred? And there is no exception for the egregiousness or the level or the badness of the misconduct. There's no exception for that. It doesn't matter how bad the misconduct is, the remedy is a new trial. And even if the judge is involved, as in Oregon v. Kennedy itself, although it wasn't the level of egregiousness that we see here, but the judge wasn't, but this was judicial misconduct in Oregon v. Kennedy. Or if you look at, you know, Julio v. United States, where you've got the prosecutor suborning perjury, similar to what happened here. The remedy is, if there's a conviction, the remedy is a new trial. And there's no exception for how bad the misconduct is. It can be as bad as it gets. The only exception is when the misconduct has that specific intent. And, in fact, I would draw a hypothetical even where the misconduct isn't that bad. Let's say a prosecutor decides that they can read the jury and they see the acquittal coming. And so during closing argument, they squeeze out a few tears in order to sort of inflame the emotions. If that draws a mistrial request, and if that request ends up being successful, those shenanigans by the prosecutor are going to bar retrial, even though it wasn't nearly as egregious or corrupt as we see in this case. Counsel, this is Judge Sutton. You've used your time. Judge Cook, Judge Marbley, do you have any other questions before his rebuttal? No, Judge Sutton. Thank you very much. Thank you so much, Judge Sutton. Thank you, Your Honors. We'll hear from the appellee. Good morning, Your Honors, and thank you for accommodating me with this telephone oral arguments. Joining me at counsel's table is Mr. Moffitt. Before we begin, I do want to point out with respect to the argument about the plea waiver that if you look at footnote 3 of the State Court of Appeals opinion, it specifically says that whatever arguments could be made about the plea waiver doctrine, they chose to address the issue based on their read of the Michigan Supreme Court's order, and if a state court chooses not to enforce a procedural default rule, I think it's off the table. Counsel, this is Judge Sutton. I guess on the right to counsel claim, this happened after Judge Turnow's decision, but I guess I'm thinking Abby v. Howe doesn't leave a lot of room to argue on that one. Am I wrong about that? I am certainly concerned about the Abby decision, but it did not predate my brief, and I spent significant time, I thought, trying to address why Abby v. Howe... Well, Judge, I was saying Judge Turnow's decision. And, I mean, well, listen, the point is pretty basic. The Supreme Court case law that's clearly established is not about multiple counsel. This is multiple counsel. I believe that the manner in which the disqualification of Mr. Moffitt took place somewhat distinguishes it because he was granted that status here, and, again, there's the entire pervading problem that we've been dealing with here. I can go into it in greater detail, but, in all honesty, I've said everything in the brief that I really can say about Abby, and, obviously, I am... Okay, let's shift to the double jeopardy. This is Judge Sutton again. So, I mean, I guess the way I would have looked at the first principles here are when you have an unfair trial, and, surely, it's an unfair trial if the judge, prosecutor are corrupt. I would have said, as a matter of first principles, the normal remedy is a fair trial with a non-corrupt judge, non-corrupt prosecutor, and the like. We have this exception for double jeopardy and goading defendants into moving for a mistrial, but, I mean, I think we would agree that's an exception to the general rule, and it's, of course, not what happened here. So why wouldn't you follow the general rule? You get an unfair trial, the remedy is to get a fair trial. My answer to that, I think, first turns on the question of whether or not there is a state ruling on the merits within the meaning of Harrington on that point. If there is, and we have to construct the ruling for the state court and then defer to it, there are certainly courts that adhere to the position that you are discussing. If I get de novo review, I think that Judge Posner's opinion addresses that this does fall within an Oregon v. Kennedy exception and that it is perverse, to say the least, to say that if I cheat to get the mistrial, that's one thing, but if I cheat to get the conviction, that's nowhere near as egregious. So I think that these items are inextricably intertwined, and I believe that that's the point that the court's going to honestly have to turn to to decide how to answer it. If you would like me to discuss the merits of why my proposed rule would be better, I can do so. I have cited to numerous commentators on that, and the authority that I can find out supports me on that. So what's your response to the Richter point? The question isn't whether there's an opinion on it. The Ed Platt deference doesn't turn on whether there's reasoning on the point at hand. I thought that was the whole point of that decision. I agree with you with respect to the issue of Harrington, but in this case the court didn't need to get there because of how it turned on the due process decision. In Harrington, there necessarily had to be a ruling to rule against the habeas petitioner in that case. I think that that is a significant difference, that you are assuming that there is a state rationale that underlies the petition, whereas in this case they could have reached the result without actually having touched that point. So we have to first infer that there was a decision, then construct the reasonable decision, and then defer to it. I would call that a double straw man theory. I guess my common sense way of thinking about it is, you obviously have to exhaust the arguments in state court, so you're kind of in this tough spot where you either didn't raise the argument, in which case you haven't exhausted it, or if you raised it, the assumption is the judgment by the state courts rejects it. I take it what you're trying to say is, well, that doesn't necessarily follow, because there could have been a couple different paths for rejecting my state court argument, and we don't know which path they took. I think that's your last point? That's what you're trying to say? That's correct. When I heard a habeas petitioner speak at the Federal Defenders Conference last year on this point, he cracked the joke. He said you can lead a judge to water, but you can't make them drink, and meaning no disrespect. But I don't think that courts always decide every issue that's in front of them when they find that one of them is dispositive or one path directs the result, and therefore we don't need to decide all the ancillary points. Does Harrington extend then to also get the deference to those uncovered points? My answer to that would be no. Mr. Friedman, I have a somewhat related question. This is Judge Marbley. Doesn't the district court decision, if we were to follow it on the choice of counsel issue, that it impermissibly shifts the burden from the petitioner to the government in this case? The turnout reasoned that nothing in clearly established Supreme Court law limits the right to counsel of one's choice to a single attorney willing to handle the whole case. That's what he said. But that seems fabulous because it puts the burden on the petitioner to show why what was done to him clearly violates clearly established precedent. It doesn't force the state court to allow everything that isn't clearly barred. So doesn't that impermissibly shift the burden? As phrased, I would have to answer yes, but no two cases are ever exactly the same, and it is always possible to find a distinction between any two cases. The question is whether the rationale that is stated by the United States Supreme Court applies, not whether the two cases are factually identical. I think that the issue with respect to Mr. Moffitt is twofold. First of all, he had been granted that status. The judge actually said that earlier in the same case that she could not overrule a co-equal judge with respect to rulings that had already been decided, and he had been granted that leave. He had been participating in it. And as the Court of Appeals panel in this case noted, the real concern that came up was that she believed that his role was growing in the case, and as the court stated earlier, that there was a fear that this growing role was actually going to somehow slow down the litigation of the case. I'm not sure if that answered the question or not. Counsel, this is Judge Sutton. On this misconduct theory, I'm trying to figure out what the... Try for a second not to contrast it with the double jeopardy, goading someone into moving for a mistrial. If you just think of your theory, okay, there was misconduct. The misconduct was designed not so much to goad someone into moving for a mistrial, but it was misconduct designed to get a conviction, and that's sufficient to trigger double jeopardy. Put some sand on what seems to me a slippery slope. I would have guessed most misconduct in a trial are going to go in the direction of trying to get a conviction. I mean, it's very strange to think of misconduct  and that's the whole problem, this incentive to try to convict somebody. It just seems like it becomes a very big rule. Now, maybe your answer is fine. That should be the rule. If there's misconduct designed to get a conviction, that's enough to trigger double jeopardy, prevent a new trial. But is that your plan, or how would it work? If I could use a football analogy, what I believe that the concern is is that if the government sees its case going down the drain and it throws the proverbial Hail Mary pass with a loaded football or whatever the equivalent is, since I'm not into cheating in football, that that would be where the demarcation happens. Conduct would certainly have to reach this level of offensiveness. But if the prosecutor has to assume that the defense attorney would detect the misconduct rather than that they could get away with it, I think that also creates a slippery slope where you complete defenses, where you could turn around and flip it around and say, I thought the defense counsel was so off that I'd get away with it. I didn't think he would catch me, so that's why I did it. I didn't want to goad the mistrial. I wanted to get away with my card that came off the bottom of the deck to switch my cheating metaphor to a different discipline. I'm not totally following all the metaphors unless this captures it. Is your point that no, misconduct designed to generate a conviction is not usually going to work? It's just got to be utterly outrageous. And if that's the case, then it will work. Is that the point? Yes, where it's the Hail Mary path, so to speak, meaning that at that point you break to cheating because you know otherwise the game is over. I wish I could find this wonderful three-pronged test that could be published. No, go ahead, Judge Sutton. No, no, no, Judge Marvin, go ahead. Mr. Friedman, I'm just not there where I see how if someone has an unfair trial, as Judge Sutton pointed out, the proper remedy is another trial devoid of the unfairness. So if Mr. Aceval is retried without the same judge, prosecutor, police officer, and confidential informant, theoretically he gets a fair trial. So why is this not consistent with the literal text of the Fifth Amendment double jeopardy clause and all of the Supreme Court precedent under it? A critical type of trial would have gotten me a perfect verdict, but be that as it may, since that would have basically eradicated all the state's witnesses. The pervasive nature of the perjury concerning Mr. Povich touched literally all aspects of the case. Okay, let's assume that that's true. Why couldn't a retrial remedy that? You know, you give him a fair trial without this pervasive misconduct. Why do we need to basically absolve him instead of giving him a fair trial? If you remember, one of the purposes in double jeopardy is to stop the trial by attrition theory. I mean, I can think of no other case, better case than this, as an example of how this would completely deplete virtually any defendant if we adopted that approach. And I think that that's consistent with Kennedy. I mean, for every reason why you can argue for the Kennedy exception to be limited to its facts, this is an exact inversion. It creates all the incentives that rule was designed on. Counsel, this is Judge Sutton again. I've actually got Richter in front of me, and I want to read the part of it that I'm just not sure how you get around or at least want to make sure I understand how you think you can get around it. So I'm reading on from, you don't need to look at it, but it's 131, Supreme Court reporter at 784. And so they had identified the issue, and that's whether 22554D, the standard for abuse section, applies when a state court's order is unaccompanied by an opinion explaining the reasons, plural, relief has been denied. Then you go down to the next paragraph. It goes, where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multi-part claim it found insufficient. For 2254D applies when a claim, quote unquote, not a component of one has been adjudicated. I guess I feel like that's exactly this case. As your Honor was talking, I was trying to flip to the passage in the Court of Appeals opinion here on it, and please excuse the fumbling as I speak. But I'm struggling with why the State Court of Appeals decision will have anything to do with this. That's, I thought, the whole point. The State Court of Appeals opinion was a multifaceted decision where the opinion, at least the one at 283 Chapter 379, undertook all of the components to reach that rationale and did not reach the double jeopardy component except for the footnote in footnote 6, which speaks for itself. It says manifest necessity. If that does it, I have a problem. But if you're turning to and if you're going to the interlocutory appeal, whether it was the order about lack of merit and then the Supreme Court ordered the Court of Appeals to hear this and then heard it, I believe that this opinion supersedes that opinion in the chain. Okay. We'll make sure we think through it. Judge Cook or Judge Marbley, do you have any other questions? I have no other questions. Okay. Thank you, Mr. Freeman. I think we'll hear, I think the Michigan may have three more minutes. Thank you, Your Honors. And I will try to be brief. Getting to that last point first, there were two decisions from the Michigan Court of Appeals, and it is the order saying lack of merit in the grounds presented that is entitled to deference. It may have been superseded by the Court of Appeals opinion with respect to the two issues that the Michigan Supreme Court sent it back to review, which didn't include the double jeopardy claim. And to the extent that you do look at the Michigan Court of Appeals opinion, it does say in footnote six, here the prohibition against double jeopardy did not prevent defendant's retrial. Again, under Harrington v. Richter, you don't need an explanation. And under also Johnson v. Williams, which the U.S. Supreme Court decided last term, we presume that a state court has looked at an issue even if they haven't given an explanation. I'm sorry, I'll pause. Did I hear a question? No. I'm sorry, Your Honor. I will go, okay, and at the very beginning of my brother's argument, he said that the, he pointed out that the Michigan Court of Appeals dealt with the plea, guilty plea waiver of the counsel of choice claim and bypassed the waiver and went to the merits. We are not arguing a procedural default based on the state court enforcement of the waiver. We are arguing that the claim is waived in the district court and in this court by the guilty plea. So that's a distinction. We're not arguing procedural default on that claim. My brother pointed out that Moffitt was granted the status of the limited appearance, but what the state trial court didn't grant was Mr. Acevall a federal constitutional right to multiple counsel. The state court couldn't grant that. That only has to come from the United States Supreme Court, at least for habeas purposes. So even though he had multiple counsel, he never had a federal constitutional right under clearly established federal law to multiple counsel. Counsel for the defendant mentioned a Seventh Circuit decision by Judge Posner. Do you know anything about that decision? I believe that that is, that he's referring to Catton, I think, would be the case, or Wallach. Well, I'm less interested in the name of the case and more interested in how you respond to the argument. Yes, absolutely, and in that case, and I don't recall which it was, but I believe in that case, which was a direct appeal case, the Seventh Circuit was considering whether to extend the rule of Kennedy to the circumstances of the case, and the Seventh Circuit went back and forth and said there are good reasons to extend it, there are good reasons not to, and I think the discussion, to the extent that it's persuasive at all, weighs very heavily in the state's favor because if Kennedy actually allowed relief in that circumstance, there would be no discussion as to whether to extend Kennedy. There would be no extension. You would simply apply Kennedy, and you would simply grant relief. The fact that the court on direct appeal, not bound by AEDPA, not bound to only follow clearly established federal law, was able to consider this shows that clearly established federal law does not bind the state courts on that question. And so that would be my response to that case. And also, the Circuit President can't... I'm sorry, go ahead, Your Honor. Well, I was going to tell you three minutes is about up and see if Judge Marbley or Judge Cook had a question. I have none, Judge Sutton. Not here either. All right, thank you, Your Honor. The same with that clear reversal. Thank you. Thanks to both of you for your arguments, for accommodating the difficulties of doing this live in Cincinnati. We really appreciate you doing it by phone. And we thank you for your excellent oral arguments and briefs. We greatly appreciate it. The case will be submitted. Thank you, Your Honor. Thank you. Counsel, you may hang up at this time. Thank you. Okay, David? Yes, ma'am. Okay, we can verify that counsel has hung up. I can confirm the attorneys have disconnected. Okay, Judge Sutton, if there's nothing further from myself...